IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON  DIVISION

| | |
|---|---|
| Genell Ham, | ) CIVIL ACTION NO. 2:13-0986-RMG-BM |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| Alan Parker, Robert Campbell, Randal Reagan, Mary Springs, Geraldine Abraham, and Linda Bradshaw, | ) |
| Defendants. | ) |

This action has been filed by the Plaintiff against six (6) Defendants asserting four (4) federal causes of actions and two (2) state law causes of action.  Plaintiff alleges that she was employed as an instructor at the Turbeville Correctional Institution (TCI), part of the South Carolina Department of Corrections (SCDC), until she was wrongfully terminated from her position on April 13, 2010.  The Defendant Linda Bradshaw is alleged to be the Deputy Warden of TCI, while the remaining Defendants are all alleged to be part of the SCDC's school system, known as the Palmetto Unified District.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on August 25, 2014.  Plaintiff filed a memorandum in opposition to the Defendants' motion on September 8, 2014, following which the Defendants filed a reply memorandum on September 18, 2014.

1



The Defendants' motion is now before the Court for disposition.[1]

## Allegations of Plaintiff's Complaint

Plaintiff alleges in a Complaint that can accurately be described as "bare boned", that during her period of employment as an instructor at TCI, she was critical of "Defendants" sexual harassment of women and falsification of student roles to garner unmerited federal funds. Plaintiff alleges that the Defendant Robert Campbell, Interim Principle for TCI, made sexual comments and flirted with the Plaintiff, and on one occasion grabbed and hugged Plaintiff in a lewd and offensive manner. Plaintiff further alleges that the Defendant Alan Parker, the Principle at TCI, also made sexual comments and flirted with the Plaintiff, which Plaintiff rebuffed. Plaintiff alleges that she complained to the Defendants Bradshaw and Randal Reagan, Supervisor of the Palmetto United School District, but that Bradshaw told her there was "nothing wrong with such conduct", while Reagan instructed her to "ignore it".

Plaintiff also alleges that when she was verbally instructed to "pad her student roles", she said that she wanted these instructions in writing. Plaintiff alleges that the "Defendant" [unidentified] thereafter instructed his teachers to write the Plaintiff up every chance they had in order to get rid of her; that the Defendant Mary Springs, identified as an "Agent" of the School District, sent emails accusing Plaintiff of sharing information with correctional officers about "Defendant's rules violations" and falsely accused Plaintiff of yelling at her; and that the Defendant

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



Parker falsely accused Plaintiff of going through his papers.[2]  Plaintiff alleges that the "Defendants" then terminated her in retaliation for complaining about their unlawful conduct.

In her **First Cause of Action**, Plaintiff asserts a claim for discrimination on the basis of sex in violation of 42 U.S.C. § 1981.  In her **Second Cause of Action**, Plaintiff asserts a claim for unlawful retaliation in violation of 42 U.S.C. § 1981.  In her **Third Cause of Action**, Plaintiff asserts a claim for sex discrimination/retaliation under 42 U.S.C. § 1983.  In her **Fourth Cause of Action**, Plaintiff alleges a violation of her First Amendment right of free speech pursuant to 42 U.S.C. § 1983.  In her **Fifth Cause of Action**, Plaintiff asserts a state law claim of battery, apparently just against the Defendant Campbell, who she alleges "did grab and hug Plaintiff in a rude and offensive manner".   In her **Sixth Cause of Action**, Plaintiff asserts a state law claim for defamation.

### Discussion

As noted, the Defendants have moved for summary judgment on all of Plaintiff's claims.  Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).  Once the moving party makes this showing, however, to avoid summary judgment the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial.  Baber

---

[2]The narrative of Plaintiff's complaint does not contain any allegations against the remaining Defendant, Geraldine Abraham.

3



v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

## I

### (Discovery Issues)

As an initial matter, the undersigned is constrained to note that Plaintiff has failed to comply with discovery directives issued by the Court. By way of history, the Defendants filed an Answer on July 22, 2013, and a scheduling order was entered on July 23, 2013 setting forth a discovery deadline of January 17, 2014. On January 14, 2014 (three days before the discovery deadline), the Defendants filed a motion to compel discovery. In this motion, the Defendants asserted that Plaintiff had never filed her responses to Local Rule 26.03 Interrogatories, and had also failed to provide "formal written answers to Defendants' First Set of Interrogatories [or] responses to Defendants' First Request for Production of Documents". Defendants' further asserted in their motion that Plaintiff had not herself conducted any discovery in the case at all.

Attached to Defendants' motion were copies of Defendants discovery requests, as well as emails dating back to September 2013 setting forth Defendants' attempts to obtain discovery responses from Plaintiff's counsel. One of these emails indicated that, in addition to written discovery, Plaintiff's deposition had been noticed for January 16, 2014, but that the Defendants had not heard from Plaintiff's counsel regarding Plaintiff's deposition, and further stating therein "[f]rankly, it appears that your client [h]as abandoned her case. If that is so, please notify us immediately, and we will be happy to file a joint dismissal with prejudice". While Plaintiff's counsel apparently did not respond to this email, he did send an email to defense counsel on December 18, 2013 requesting a thirty day extension to answer Defendants' discovery requests, stating therein that he had had the flu. Defense counsel responded to this email by advising Plaintiff



4

that, since a thirty day extension would take the parties beyond the discovery deadline set forth in the scheduling order, Plaintiff would need to file a motion (which Defendants would not oppose) to extend the discovery deadline. However, no motion was ever filed. See generally, Defendants' Motion to Compel, with attached exhibits.

Following the expiration of the deadline for completing discovery in this case, the Defendants filed a motion to dismiss Plaintiff's case for lack of prosecution pursuant to Rule 41(b), Fed.R.Civ.P., arguing therein that (despite repeated requests) Plaintiff had still never filed Local Rule 26.03 Interrogatories, had never responded to Defendants' discovery requests, as well as that Plaintiff had failed to appear for her scheduled deposition. With respect to Plaintiff's scheduled deposition, a transcript was prepared after Plaintiff did not appear, which reflected that defense counsel called Plaintiff's counsel, and was told by Plaintiff's counsel "that he simply forgot about the deposition and did not even know if he had notified his client that there was a deposition today", although on January 18, 2014 (the day after expiration of the discovery period in this case), defense counsel received an email from Plaintiff's counsel apologizing for allowing Plaintiff's deposition to "fall between the cracks", and stating that he would "get discovery done next week, god willing". See generally, Defendants' Motion to dismiss, with attached exhibits.

Plaintiff's counsel filed a document styled "response to motion" on January 29, 2014, in which he stated, inter alia, that Plaintiff's "deposition can proceed at the convenience of Defense counsel". In a subsequent filing of February 4, 2014, Plaintiff submitted copies of Plaintiff's responses to Defendants' Interrogatories and Requests to Produce; however, these responses were incomplete, with several reflecting that Plaintiff was still in the process of obtaining further information and/or documents. Some responses also contained the notation "see attached"; however,

5



there were no attachments to the responses filed with the Court.  <u>See</u> <u>generally</u>, Plaintiff's Responsive Filings.  The Defendants filed a reply memorandum on February 7, 2014, noting again that the discovery period in this case had expired, and that a motion to dismiss had now been filed. Further, with respect to Plaintiff's purported answers to interrogatories filed with the Court, Defendants' counsel represented to the Court that Plaintiff's counsel had told defense counsel that these answers were only a "first draft".  Defendants also noted that Plaintiff had named an expert witness, even though the deadline for Plaintiff to have named an expert witness expired October 17, 2013.  <u>See</u> Court Docket No. 9.  Further, Plaintiff's return to Defendants' Request to Produce included no medical reports, no tape recordings, or any expert reports, and Defendants asserted that as of the date of the filing of Defendants' reply (February 7, 2014), "none of these items have been produced . . . .".  <u>See</u> <u>generally</u> Defendants' Reply Memorandum, with attached exhibits.

In a Report and Recommendation entered February 11, 2014, the undersigned recommended that if Plaintiff's counsel indicated a willingness to continue with the prosecution of this case, to comply with the rules of this Court, and to pay Defendants' fees and costs incurred as a result of Plaintiff's conduct, the Defendant's motion to dismiss should be denied and the case allowed to proceed with an amended scheduling order.  <u>See</u> Court Docket No. 19.  This recommendation was adopted by Order of the Court filed March 7, 2014, and on March 27, 2014, Plaintiff's counsel was ordered to pay to the Defendants the sum of $3,015 no later than thirty days from the issuance of that Order.  <u>See</u> Court Docket Nos. 23, 28.  However, Plaintiff's counsel thereafter failed to even contact defense counsel regarding the amount due, and failed to deliver any amount to the Defendants in accordance with the Court Order.  Therefore, in a motion filed April 29, 2014, Defendants asked that Plaintiff be required to show cause why her case should not be



dismissed with prejudice.

A show cause hearing was held on June 16, 2014 before the Honorable Richard Gergel, United States District Judge, following which the Court amended its previous order so as to allow Plaintiff's counsel to submit monthly payments to defense counsel in the amount of $250, with the first payment being due on July 1, 2014. See Order (Court Docket No. 40). The Court further ordered that Plaintiff was to provide Rule 26.03 interrogatory responses as well as responses to all of the Defendants' interrogatories and requests for production by June 23, 2014. Plaintiff's deposition was ordered to be taken the week of July 7, 2014, with defense counsel having thirty days thereafter to take any additional depositions Defendants might need as a result of Plaintiff's deposition testimony. Defense counsel specifically noted that at the hearing that the deadline had passed for Plaintiff to name an expert, and asked that Plaintiff's counsel observe the deadlines that had passed. Finally, both Plaintiff and Plaintiff's counsel were admonished by the Court that the discovery deadlines and requirements were to be strictly complied with, and that the Court would very carefully consider dismissal of this civil action if there was any failure to timely comply with the new discovery deadlines. See Court Docket Nos. 41 and 42.

Notwithstanding this case history and orders of the Court as set forth hereinabove, as an attachment to Plaintiff's opposition to summary judgment, Plaintiff submitted an affidavit from Benny Webb, who defense counsel represents was not timely identified as an expert witness in accordance with the Federal Rules of Civil Procedure or orders of this Court, and who Plaintiff herself testified had no personal knowledge regarding any of the incidents set forth in her Complaint. See Defendants' Exhibit B (attached to Reply Memorandum), p. 21, lines 17-22. Defendants further complain that in the affidavit Plaintiff submitted as an exhibit, Webb attests that he had listened to



a tape recording that had been made by the Plaintiff of a meeting between her, Parker and others at the Turbeville Correctional Institution, and which related to her claims in this case. Defendants note that they had specifically requested through discovery any recordings relevant to Plaintiff's claims in this lawsuit, but that Plaintiff had failed to reveal the existence of the recording that she is now using as evidence to oppose the Defendants' summary judgment motion, and that as of the filing of Defendants' reply memorandum, Plaintiff had still not provided Defendants with a copy of this recording. See generally, Plaintiff Response Brief, Court Docket No. 46-3; Defendants' Reply Brief, Exhibit B, p. 21, lines 17-22; Exhibit C, p. 4, No. 3; Exhibit D, p. 4, No. 7. Defendants argue that as Plaintiff submitted an affidavit from an improper witness and failed to acknowledge possession of or produce this recording, she has failed to comply with the Court's directive from the Rule to Show Cause hearing of June 16, 2014, and that they are therefore entitled to dismissal of this lawsuit with prejudice. Rule 41(b), Fed.R.Civ.P.; see Chandler Leasing Corp. v. Lopez, 669 F.2d 929 (4th Cir. 1982) [setting forth test to determine whether a Rule 41(b) dismissal is appropriate].

        As the Order and directive at issue is from the District Judge in this case, the undersigned makes no recommendation with respect to whether dismissal of this case for violation of the Court's Order is appropriate, leaving that matter to the District Judge in his discretion. However, in light of this case history and the previous orders of this Court, the undersigned has not considered Webb's affidavit or any reference to a recording set forth therein in issuing a recommendation on the merits of Plaintiff's claims.

## II.

### (First and Second Causes of Action)

        In the First and Second Causes of Action of her Complaint, Plaintiff asserts claims

8



for sex discrimination and unlawful retaliation pursuant to 42 U.S.C. § 1981. Defendants argue that these causes of action should be dismissed because § 1981 is not applicable to claims involving sex discrimination. The undersigned is constrained to agree. See Butler v. Crittenden County Ark., 708 F.3d 1044, 1051 (8th Cir. 2013) [§ 1981 does not encompass sex discrimination or retaliation claims]; Jachyra v. City of Southfield, 97 F.3d 1452, at * 2 (6th Cir. 1996) ["[Plaintiff] cannot state a claim under § 1981 because claims of sex discrimination are not cognizable under this section"]; Torres-Santiago v. Alcarax-Emmanuelli, 553 F.Supp.2d 75, 85 (D.P.R. 2008) [§ 1981 does not proscribe gender based discrimination]; Kilcrease v. Coffee County Ala., 951 F.Supp. 212, 215 (M.D.Ala. 1996) ["A claim of discrimination on the basis of . . . sex cannot be maintained under § 1981"].

Plaintiff does not address this critical issue in her brief, other than to refer to several cases which do not provide any support for her assertion that a sex discrimination claim can be pursued under § 1981. See generally, Plaintiff's Brief, pp. 4-5. While Plaintiff has attached as an exhibit to her brief an unpublished memorandum opinion from a case from the District of Maryland, Nelson v. State Employees Credit Union of Maryland, Inc.; Defendants correctly point out that that decision specifically noted that Plaintiff's sex discrimination claim in that case was being brought under Title VII, not § 1981, and that only her race and color discrimination claims were being pursued under § 1981. See Plaintiff's Exhibit (Docket No. 46-6, p. 7). Hence, this decision does not support Plaintiff's argument that she can pursue gender discrimination claims under § 1981.

Therefore, Plaintiff's First and Second Causes of Action asserting gender discrimination claims under § 1981 should be dismissed.



## III.

### (Third Cause of Action)

In her Third Cause of Action, Plaintiff asserts a claim for sex discrimination/retaliation under 42 U.S.C. § 1983. Section 1983 provides the framework for a claimant to sue state actors for violations of a constitutional right. Jennings v. Davis, 476 F.2d 1271, 1275 (8th Cir. 1973); McKnight v. Rees, 88 F.3d 417, 419 (6th Cir. 1996). As employees of the South Carolina Department of Corrections,[3] the Defendants are all "state actors" and are therefore subject to liability for damages in their individual capacities under § 1983 if found to have violated Plaintiff's constitutional rights. Gray v. University of Colorado Hosp. Authority, 672 F.3d 909, 928 (10th Cir. 2012). Discrimination on the basis of sex by state actors is a violation of the constitution. Klen v. Colorado State Bd. of Agriculture, No. 05-2452, 2007 WL 2022061 at * 19 (D.Colo. July 9, 2007). Therefore, Plaintiff can sue these Defendants for a claim of sex discrimination under § 1983.

In support of summary judgment on this claim, Defendants initially assert a statute of limitations defense. The applicable statute of limitations for a claim under § 1983 is three (3) years. See S.C.Code Ann. § 15-3-530(5); see also Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 954 (4th Cir. 1995) [Statue of limitations for a claim under § 1983 is based on state law]; King v. Seaboard Coastline R.R. Co., 538 F.2d 581, 584 (4th Cir. 1976) [same]. Plaintiff's Complaint was filed on April 11, 2013. See Court Docket No. 1. Therefore, any claim predating April 11, 2010 is time barred and subject to dismissal.

---

[3] While it is not clear from the parties briefs how the prison's school program is set up, no Defendant has argued they are not "state employees" for purposes of this lawsuit.

10



Plaintiff alleges in her Complaint that she was wrongfully terminated by the Defendants on April 13, 2010. <u>Complaint</u>, ¶ 5. Hence, her claim that she was wrongfully terminated is not time barred. <u>Cf</u>. <u>Bireline v. Seagondollar</u>, 567 F.2d 260, 263 (4th Cir. 1977) [Finding that § 1983 claim by Plaintiff alleging her termination was a result of a policy of sex discrimination accrued on the date she received termination notice].   However, with respect to the remainder of Plaintiff's claims, Plaintiff conceded at her deposition that, other than her termination, the discriminatory conduct of which she complains all occurred prior to April 11, 2010. <u>See</u> <u>Plaintiff's</u> <u>Deposition</u> [Defendant's Exhibit A], pp. 26, 43-44, 103. Therefore, Plaintiff's discrimination claims other than with respect to her termination are all time barred, and should be dismissed. <u>Nasim</u>, 64 F.3d at 955 ["[F]or purposes of a § 1983 claim, a cause of action accrues when the Plaintiff has knowledge of his claim"]; <u>Brooks v. City of Winston-Salem, N.C.</u>, 85 F.3d 178, 181 (4th Cir. 1996) ["Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to [her] that reasonable inquiry will reveal [her] cause of action"] (internal quotations omitted).[4]

_____

[4]Plaintiff argues in her brief that her earlier § 1983 claims are nevertheless timely because they reflected an ongoing pattern of discrimination, and that conduct that occurred outside an applicable time frame may be considered as part of a hostile work environment claim as long as some of the offending conduct occurred within the applicable time frame. <u>Plaintiff's Brief</u>, pp. 5-6.  However, while, in appropriate circumstances, a Plaintiff can include prior acts of discrimination under a "continuing violation" theory if she has asserted a hostile work environment claim as long as an act contributing to the claim has occurred within the filing period; <u>Cf</u>. <u>Huckabay v. Moore</u>, 142 F.3d 233, 239 (5th Cir. 1998) [distinguishing applicability of the continuing violation theory to hostile work environment claims, for which it may be used, from other types of claims, such as failure to promote]; <u>Godoy v. Maplehurst Bakeries, Inc.</u>, 747 F.Supp. 2d 298, 309 (D. Puerto Rico 2010); Plaintiff has not asserted a hostile work environment claim in her Complaint.  Rather, Plaintiff styles her Third Cause of Action as one for "sex discrimination", which she ties to the "preceding paragraphs" of her Complaint wherein she alleges Campbell and Parker made sexual overtures to her which she (continued...)



Turning then to Plaintiff's § 1983 termination claim, Plaintiff alleges that she was terminated "in retaliation for [her] complaining about their unlawful conduct on the pretext [ ] cited above". Complaint, ¶ 10. A retaliation claim under § 1983 is evaluated under the same analytical framework as is used for retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Lightner v. City of Wilmington, NC, 545 F.3d 260, 263, n. * (4th Cir. 2008) [Title VII analytical framework applies to discrimination claims under § 1983]; Holder v. City of Raleigh, 867 F.2d 823, 828 (4th Cir. 1989) [same]. Pursuant to this analytical framework, the employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) a causal connection existed

---

[4](...continued)
"rebuffed", and with respect to her discharge, that she was accused of rules violations and then terminated in retaliation for complaining about the unlawful conduct previously alleged. Complaint, ¶ ¶ 7, 9, 10, 19. These are separate and distinct claims from a hostile work environment claim. Murphy v Suffolk County Community College, No. 10-251, 2011 WL 5976082 at * 7 (E.D.N.Y. Nov. 29, 2011)[Plaintiff's disparate treatment claims, hostile work environment claims, and retaliation claim are all distinct claims and should be alleged in separate counts.]; Bozeman v. Per-Se Technologies, Inc., 456 F.Supp.2d 1282, 1344 n. 149 (N.D.Ga. Oct. 16, 2006)["A hostile work environment claim is a separate and distinct cause of action under Title VII, and requires a different analytical approach than a traditional retaliation claim"]; see also Lester v. Natsios, 290 F.Supp. 2d 11, 33 (D.D.C. 2003)["Discrete acts constituting discrimination . . . are different in kind from a hostile work environment claim . . . .]; Kilby-Robb v. Spellings, 522 F.Supp.2d 148, 164 (D.D.C. 2007)["[A]lleged acts of disparate treatment cannot be transformed, without more, into a hostile work environment claim."]; Parker v. State, Dep't. of Public Safety, 11 F.Supp.2d 467, 475 (D.Del. 1998)["[T]he dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim are apparent. Such an action would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address."]. Therefore, these earlier acts of discrimination are not timely simply because Plaintiff was discharged within the statutory time period, although the undersigned does find that her earlier acts of protected conduct and evidence related thereto may be considered for purposes of her retaliation claim. See, n. 5, infra.

12



between the protected activity and the adverse action.  Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997).  Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions.  If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextual.  Id.

      Considered in the light most favorable to the Plaintiff, the evidence before the Court reflects that Plaintiff engaged in protected conduct when she complained in October 2008 to superiors that the Defendant Campbell had asked her for a hug in July 2008, when she complained in August 2009 about unprofessional conduct by the Defendant Parker, and when she submitted a "sexual harassment/hostile work environment complaint" on March 22, 2010, after she accessed and viewed email messages from a coworker's email account.  See Defendants Exhibits B, C and E.[5] See also Rodas v. Town of Farmington, 918 F.Supp.2d 183, 189 (W.D.N.Y. Jan. 16, 2013)["'Protected activity' includes opposing employment practices that are prohibited . . . (such as discrimination based on race, color, religion, sex, or national origin), or making a charge of discrimination, or participating in any investigation, proceeding, or hearing . . . ."]; Bowman v. Holopack Intern. Corp., No. 06-1648, 2007 WL 4481130 at * 14 (D.S.C. Dec. 19, 2007)["[T]he

---

[5]Although this conduct all pre-dates April 11, 2010, as the alleged retaliatory act at issue (Plaintiff's termination) occurred within the applicable limitations period for purposes of this claim, the Court can consider the factual allegations which Plaintiff alleges tie that act to her discriminatory discharge.  Cf. Huckabay v. Moore, 142 F.3d 233, 238-239 (5th Cir. 1998) [where independent actionable conduct occurred within the statutory period, the court can consider the discriminatory practices, rather than just the discrete occurrence, that give rise to the cause of action]; National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002) [Conduct can be considered so long as the acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the relevant time period].



opposition clause encompasses informal protests, such as voicing complaints to superiors or protests using an employer's grievance procedures."]. It is also undisputed that Plaintiff was subjected to an adverse employment action when she was terminated by letter dated April 12, 2010. <u>Defendants' Exhibit I</u>. Cf. <u>Lybarger v. Gates</u>, No. 10-373, 2012 WL 1095915, at * 11 (N.D.Oh. Mar. 30, 2012) [Adverse employment actions are typically marked by a significant change in employment status, including . . . firing . . . ."] (internal citations omitted).

Finally, while Defendants argue that Plaintiff has provided no evidence to show that her discharge was related to her complaints of discrimination, since some courts accept a close proximity in time as being sufficient, standing alone, to establish a causal connection (at least for purposes of summary judgment), and in order to allow for a more thorough discussion of Plaintiff's retaliation claim, the undersigned has credited Plaintiff with the establishment of all three (3) prongs of her prima facia case. <u>Blue v. International Broth. of Elec. Workers Local Union 159</u>, 676 F.3d 579, 2012 WL 1071704 at * 6 (7th Cir. 2012)[Suspicious "[t]iming supports an inference of retaliation."]; <u>cf.</u> <u>Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago</u>, 104 F.3d 1004, 1013 (7th Cir. 1997)[noting that "suspicious timing does constitute circumstantial . . . evidence to support a claim of discrimination"]; <u>Pantoja v. American NTN Bearing Mfg. Corp.</u>, 495 F.3d 840, 850 (7th Cir. 2007) [Timing was "suspicious enough to suffice to support [ ] prima facie case."]; <u>see also</u> <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-256 (1981) [the burden of establishing a <u>prima</u> <u>facie</u> case is not onerous]; <u>but</u> <u>see</u> <u>Palermo v. Clinton</u>, No. 11-1958, 2012 WL 169125 at * 2 (7th Cir. Jan. 20, 2012)[Suspicious timing alone generally not enough to create a triable issue retaliation case].

However, the Defendants have submitted evidence that Plaintiff had a poor work

14



record and was discharged for unprofessional conduct, not because of any plan or scheme to retaliate against her for complaining about sexual harassment. Defendants' evidence includes evidence that Plaintiff had a confrontation with another employee, Donald Doane, which itself related back to a previous incident whereby Plaintiff had been suspended, and for which she was counseled (Defendants' Exhibit B); that during Plaintiff's meeting with Department Supervisors on September 10, 2009, Plaintiff was loud and disrespectful and subsequently refused to sign a Memorandum of Understanding from that meeting (Defendants' Exhibit D); that Plaintiff admitted she had accessed and viewed email messages from a co-worker's email account (Defendants' Exhibit E; see also Plaintiff's Deposition, pp. 80-81); that during a staff meeting on March 18, 2010 Plaintiff began "screaming and cursing" and was again disrespectful to Department employees (Defendants' Exhibit F); that also on March 18, 2010 Plaintiff refused to allow one of Springs' students into her class due to various complaints and dissatisfactions Plaintiff had with her employers (Defendants' Exhibit G); and that the Defendant Abraham (Director of Guidance) had been unable to perform site visits of Plaintiff's classes (Defendants' Exhibit H). Defendants' evidence is that Plaintiff was then terminated due to her unprofessional conduct by letter dated April 12, 2010 following a corrective action review meeting that had been held on April 8, 2010. Defendants' Exhibit I. This evidence is sufficient to establish a legitimate, non-discriminatory reason for Plaintiff's termination. See EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [The Defendant's burden of establishing a legitimate, non-discriminatory reason is only one of production, not of persuasion]. Therefore, Plaintiff must present evidence of pretext in the making of the decision to terminate her in order to avoid summary judgment on her retaliation claim.

        In order to show pretext, Plaintiff must show that "but for" the Defendants' intent to



retaliate against her because of her having engaged in protected activity, she would not have been subjected to the employment action at issue. EEOC, 955 F.2d at 941; Conkwright v. Westinghouse Elec. Corp., 933 F.2d at 231. 234-235 (4th Cir. 1991). "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [retaliatory animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000). Plaintiff has failed to present any such evidence.

In her brief, Plaintiff discusses the incidents where she engaged in protected conduct when she complained about Campbell and Parker. Defendants' Brief, pp. 2-3. However, the simple fact that Plaintiff engaged in protected conduct and was later terminated is not evidence that her termination was in retaliation for her having engaged in protected conduct. See Cecilino v. Allstate Ins. Co., 908 F.Supp. 519, 532 (N.D.Ill. 1995) [a simple showing that an adverse action occurred after a complaint of discrimination 'is not even enough to make out a prima facie case of retaliation, let alone to survive a motion for summary judgment.']; Palermo v. Clinton, No. 11-1958, 2012 WL 169125 at * 2 (7th Cir. Jan. 20, 2012)[Suspicious timing alone generally not enough to create a triable issue retaliation case]. Rather, Plaintiff needs evidence that shows a causal connection between these two events. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"]. Plaintiff has provided no evidence to show that her discharge was related to her complaints of

16



discrimination.

Initially, it must be pointed out that the evidence before the Court shows that the decision to terminate the Plaintiff was made by Robin Gracien, Chief of the Employee Relations Branch of the Division of Human Resources, on recommendation of Reagan and TCI Warden "Knowlin". <u>Defendants' Exhibit I</u>. Neither Gracien or Knowlin is named as a Defendant in this case. Further, Plaintiff has presented no evidence whatsoever that any of the *other* individuals named as Defendants in this case were involved in the decision to terminate her employment or exercised a significant degree of influence over that decision. Therefore, even if Plaintiff's retaliation claim was to proceed to trial, all of the named Defendants other than the Defendant Reagan would be entitled to dismissal as party Defendants. See <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1999) ["Liability . . . must be based on the personal involvement of the Defendant"], <u>cert</u>. <u>denied</u>, 522 U.S. 1154 (1999); <u>Wilson v. Cooper</u>, 922 F.Supp. 1286, 1293 (N.D.Ill. 1996); <u>cf</u>. <u>Sanford v. Walgreen Co.</u>, No. 08-6325, 2010 WL 380907 at * 4 (N.D. Ill. Jan. 27, 2010) [Statements of persons who lack the final decision - making authority may be probative of intentional discrimination only if those persons exercised a significant degree of influence over the contested decision].

Even with respect to Reagan, Plaintiff has no evidence that Reagan made the decision to terminate her because she had complained about Parker and Campbell's conduct.[6] In her brief,

---

[6]Plaintiff's other act of "protected conduct" (from March 22, 2010), although filed on a "sexual harassment/hostile work environment complaint" form, actually involved the Plaintiff complaining about what another employee was writing about Plaintiff in emails. These emails included comments about other employees being unable to get into Plaintiff's classes, the Defendant Springs (who is also, like the Plaintiff, a female) calling Plaintiff a "dumb ass", as well as comments (continued...)



Plaintiff finds evidence of a retaliatory animus in Gracien's comment in her memorandum to the Plaintiff, following Plaintiff's complaint of August 3, 2009, that "as a subordinate, we all have individuals that we report and answer to.  While we may not always agree with those in authority, it is our responsibility to do our job as required, follow instructions and respond to others in a professional manner".  Plaintiff's Brief, p. 3; see Defendant's Exhibit C.  However, as previously noted, Gracien is not even a Defendant, and in any event there is nothing "retaliatory" about that comment.

Plaintiff also argues that in the subsequent meeting she had with Reagan on September 2009, that Reagan "lost control yelling and (sic) threatening Plaintiff".[7]  Defendants' evidence from this meeting reflects that it was the Plaintiff who was doing the yelling and screaming

---

[6](...continued)
made about other employees with which Plaintiff disagreed.  Defendants' Exhibit E.  While, given the title of the form on which this complaint was submitted, the undersigned has included this submission as being part of Plaintiff's protected activity for purposes of her prima facie case, the complaint Plaintiff makes in this submission is not actually evidence of any discriminatory activity based on her gender.  See Sung Kun Kim v. Panetta, No. 11-1370, 2012 WL 3600288 at * 17 (E.D.Va. Aug. 21, 2012) ["Protected activity does not include generalized employment-related complaints unrelated to . . . prohibited discrimination"]; Sara Kaye Ruffner v. MD OMG EMP LLC, No. 11-1880, 2012 WL 3542019 at * 3 (M.D. Aug. 13, 2012)["Protected activity does not include opposition to all 'unlawful practices' or 'practices the employee simply thinks are somehow unfair'; the employee must have 'actually opposed employment practices made unlawful by the [anti-discrimination statute"].

[7]This statement is made by Plaintiff in her affidavit attached to her memorandum in opposition.  While Defendants criticize this affidavit, correctly noting that Plaintiff cannot contradict previous statements or her deposition testimony by filing a later affidavit, since the Defendants have only provided excepts from Plaintiff's deposition, not the entire document, there is no way for the Court to determine whether Plaintiff's statement in her affidavit contradicts her prior deposition testimony.  Therefore, the undersigned has considered Plaintiff's claim that Reagan yelled at her during this meeting to be true for purposes of summary judgment.  Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996) [The facts and evidence are considered and discussed in the light most favorable to the party opposing summary judgment].



at that meeting.  See Defendants' Exhibit D.  However, even assuming Reagan and Plaintiff were by that point not getting along (which is a fair inference from the evidence submitted), that is not evidence that the reason Reagan supported Plaintiff's firing seven months later was because Plaintiff had complained about Parker and Campbell making improper advances toward her.  Hopkins v. Baltimore Gas and Electric Co., 871 F.Supp. 822, 836 (D.Md. 1994), aff'd 78 F.3d 745 (4th Cir. 1996), cert. denied, 117 S.Ct. 70 (1996) [finding that "many of [Plaintiff's] allegations can be attributed to an increase of predictable tension in an office after a discrimination charge is filed. This is not adverse employment action."]; Geisler v. Folsom, 735 F.2d 991, 994 (6th Cir. 1984); Manatt v Bank of America, 339 F.3d 792, 803 (9th Cir. 2003) [Allegations that plaintiff's supervisor stared at her in an angry way and that co-workers were being mean to her were insufficient to show an adverse employment action]; cf. Flaherty v. Gas Research Institute, 31 F.3d 451, 456 (7th Cir. 1994) [a "bruised ego" is not enough]; see also Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief....].

Neither of these arguments establishes a retaliatory motive for Plaintiff's discharge; cf. Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995) [[The discrimination statutes do] not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977); and other than these two examples, Plaintiff simply refers in her brief to some string cites setting forth the standard for finding pretext, without any analysis applying the facts of this case to this standard.  See Plaintiff's Brief, p. 9.  Hence, Plaintiff's argument is essentially that, because her termination occurred after she had made complaints of discriminatory conduct, Reagan's decision to terminate her employment



constituted unlawful retaliation.  That is simply not the standard for a retaliation claim, for if it were, then any employee who engaged in protected activity would thereafter be shielded from normal workplace discipline.  Cf. Sherrill v. Potter, No. 06-4120, 2008 WL 5220291 at * * 2-3 (N.D.Ill. Dec. 9, 2008); Wilson v. Noble Drilling Services, Inc., 405 Fed. Appx. 909, 914 (5th Cir. Dec. 23, 2010) [While suspicious timing alone has been recognized as enough to establish a prima facie case, it alone is insufficient to show pretext]; see Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) ["Title VII serves the laudable goal of protecting employee access to agencies and courts.  It does not shield employees from normal sanctions for misconduct."]; Bodoy v. North Arundel Hospital, 945 F.Supp. 890, 898 (D.Md. 1996).

Rather, in order to succeed on her retaliation claim, Plaintiff must have evidence sufficient to create a genuine issue of fact that the *reason* she was fired was because she had complained about the conduct of Parker and Campbell, not because her employer made a mistake, was incorrect in its findings concerning Plaintiff's employment, are even that her supervisor just did not like her.  Sullivan, 197 F.3d at 815 ["Without a showing that those other reasons were discriminatory,  [Plaintiff] cannot establish a prima facie case for relief....]; cf. Kariotis v. Navistar Intern. Transp. Corp., 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination.  Thus when an employee is discharged because of  an employer's honest mistake, federal anti-discrimination laws offer no protection."]; see Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); see generally, Jamil v. Secretary Dep't of Defense, 910 F.2d 1203, 1207-1208 (4th Cir. 1990); Holder v. Raleigh, 867

20



F.2d 823, 828 (4th Cir. 1989); Crowley v. Prince George's County, 890 F.2d 683, 687 (4th Cir. 1989), cert. denied, 111 S.Ct. 101 (1992); McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986), cert. denied, 479 U.S. 1034 (1987); see generally Moore v. Sears, Roebuck & Co., 683 F.2d 1321, 1323, n. 4 (11th Cir. 1982); Jones v. Orleans Parish School Board, 679 F.2d 32, 38 (5th Cir. 1982), modified on other grounds, cert. denied, 461 U.S. 951 (1983), 688 F.2d 342 (5th Cir. 1982); North Carolina Dep't of Corrections v. Gibson, 301 S.E.2d 78, 85 (N.C. 1983).

Plaintiff has offered no evidence to show that the actions complained of were the result of unlawful retaliation, other than her own subjective surmise, belief and speculation. Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) [Plaintiff may not "create a genuine issue of fact through mere speculation or the building of one inference upon another"]; Cecilino, 908 F.Supp. at 532 [a simple showing that an adverse action occurred after a complaint of discrimination 'is not even enough to make out a prima facie case of retaliation, let alone to survive a motion for summary judgment.']; Palermo, 2012 WL 169125 at * 2 [Suspicious timing alone generally not enough to create a triable issue retaliation case]. Therefore, Plaintiff's retaliation claim is without merit and should be dismissed. Rucker v. Greenville Co. Sheriff Dep't., No. 10-1533, 2012 WL 951789, * 2 (D.S.C. March 20, 2012) [Conclusory allegation or denials, without more, are insufficient to preclude the granting of a summary judgment motion]; see also Ross, 759 F.2d at 365; McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991); Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); Komel v. Jewel Cos., 874 F.2d 472, 475 (7th Cir. 1989); Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989) (citing Gairola v. Virginia Dep't of General Servs., 753 F.2d 1281, 1288 (4th Cir. 1985)); United Black Fire Fighters of Norfolk v. Hirst, 604 F.2d 844 (4th Cir. 1979). See Rule 56, Fed.R.Civ.P.; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Felty, 818 F.2d 1129-



1130; <u>Gairola</u>, 753 F.2d at 1288, n.4.

## IV.

### (Fourth Cause of Action)

In her Fourth Cause of action, Plaintiff alleges that the Defendants punished her for exercising her First Amendment right to freedom of speech. <u>Complaint</u>, ¶ 24. The First Amendment provides that Congress shall make no law abridging the freedom of speech or the right of the people peaceably to assemble and to petition the government for a redress of grievances.

The rights guaranteed by the First Amendment apply to the states and local government entities through their incorporation into the due process clause of the Fourteenth Amendment. <u>See</u>, e.g., <u>Gidlow v. People of New York</u>, 268 U.S. 652, 666 (1925); <u>Oliver v. United States</u>, 466 U.S. 170, 186 n.3 (1984); <u>Elfbrandt v. Russell</u>, 384 U.S. 11, 18 (1966). Therefore, as state employees, the Defendants in this case are subject to suit for damages in their individual capacities under § 1983 if they violated Plaintiff's First Amendment constitutional rights. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989); <u>Hafer v. Melo</u>, 112 S.Ct. 358, 365 (1991); <u>Goodmon v. Rockefeller</u>, 947 F.2d 1186 (4th Cir. 1991); <u>Inmates v. Owens</u>, 561 F.2d 560 (4th Cir. 1977).

In her brief, Plaintiff explains this cause of action by stating that her reporting of alleged discriminatory conduct was a matter of "public concern", while in her deposition Plaintiff testified that her freedom of speech claim is based on her not being "allowed to say anything back" to Reagan, that she "had to just take what he said", and that this claim was also based on Springs' emails, which told "lies" about her. <u>Plaintiff's Deposition</u>, pp. 187-188, 190. Unfortunately for the Plaintiff, however, these claims are all subject to dismissal for the same reason Plaintiff's disparate



treatment claims are subject to dismissal; <u>i.e.</u>, she filed her Complaint after the three year statute of limitations applicable to these claims had expired.  S.C.Code Ann. §15-3-530(5); <u>Owens v. Okure</u>, 488 U.S. 235, 249 (1989) [suits under § 1983, which also protects the exercise of First Amendment rights, are governed by state general or residential personal injury statutes of limitations.]; <u>see discussion</u>, Section III, <u>supra</u>.

Plaintiff has set forth no cogent argument for why this claim is not barred by the applicable three year statute of limitations.  Therefore, this cause of action should be dismissed.

## V.

### (State Law Claims)

If the Court adopts the recommendations set forth hereinabove with respect to Plaintiff's federal claims, the only claims remaining in this lawsuit will be Plaintiff two state law causes of action for battery and defamation.  Where federal claims in a lawsuit originally filed in United States District Court are dismissed, leaving only state law causes of action, any remaining state law claims should be dismissed without prejudice, so that the Plaintiff can pursue any such state law claims in state court.  <u>See generally</u>, <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966)["Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well"]; <u>Carnegie-Mellon v. Cohill</u>, 484 U.S. 343, 350, n. 7 (1988) ["[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state law claims."].[8]

---

[8]Plaintiff could, of course, maintain her state claims in this court even without her federal
(continued...)



Dismissal of these state law claims will not only allow the Plaintiff to obtain a ruling as to the viability of these claims from a proper forum, but if her claims were to survive summary judgment, it would be much more appropriate for those state law claims to be tried in state court. Dismissal of Plaintiff's state law claims would also not prejudice the Plaintiff, as the parties could seek a fast track for resolution of these claims at the state level; See Rule 40(c), S.C.R.Civ.P.; and there are no statute of limitations problems because federal law also provides for tolling of statutes of limitation for state claims during the period they were pending in federal court and for thirty days afterwards. See 28 U.S.C.A. § 1367(d); Jinks v. Richland County, 538 U.S. 456 (2003); Hedges v. Musco, et al., 204 F.3d 109, 123-124 (3rd Cir. 2000); Beck v. Prupis, 162 F.3d 1090, 1099-1100 (11th Cir. 1998) ["a dismissal under section 1367 tolls the statute of limitations on the dismissed claims for 30 days"]; cf. National Federation of Independent Business v. Sebelius, 132 S.Ct. 2566, 2592 (2012).

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment with respect to Plaintiff's federal claims as set forth in her First, Second, Third and Fourth Causes of Actions be **granted**, and that those claims be **dismissed**.

With respect to Plaintiff's remaining pendant state law causes of action, it is recommended that those claims be **dismissed**, without prejudice.[9] Mills v. Leath, 709 F.Supp. 671,

---

[8](...continued)
claims if there was diversity jurisdiction. See 28 U.S.C. § 1332(a). However, all of the parties are alleged to be South Carolina residents. See Complaint, ¶¶ 3-4; Answer, ¶¶ 3-4. Therefore, diversity jurisdiction is not available in this case.

[9]If, however, the Court in its discretion decides that the Defendants are entitled to dismissal
(continued...)



675-676 (D.S.C. 1988) [Noting that federal courts should generally decline to exercise pendant

jurisdiction over remaining state law claims after dismissal of federal claims in a lawsuit]. This will

allow Plaintiff to pursue her remaining state law claims in state court, if she chooses to do so. See

Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir. 1998)["Section 1367(d) ensures that the plaintiff

whose supplemental jurisdiction is dismissed has at least thirty days after dismissal to refile in state

court."].

       The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 29, 2014
Charleston, South Carolina

---

[9](...continued)
of this action for failure of the Plaintiff to comply with the Court's Rule to Show Cause and discovery
order; see discussion, Section I, supra; then in that event Plaintiff's state law causes of action should
be dismissed with prejudice, with the result being that this entire action would be dismissed with
prejudice.



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

